JEFFREY S. RUGG (Nevada Bar No. 10978)
jrugg@bhfs.com
LAURA E. BIELINSKI (Nevada Bar No. 10516)
lbielinski@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
Telephone:   (702) 382-2101
Facsimile:   (702) 382-8135

Attorneys for Plaintiff
BOYD GAMING CORPORATION

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BOYD GAMING CORPORATION, a Nevada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>HANS MARTIN POLLACK, an individual,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>(1) Cybersquatting under 15 U.S.C. § 1125(d)<br><br>(2) Trademark Infringement under 15 U.S.C. § 1114<br><br>(3) Unfair Competition under 15 U.S.C. § 1125(a)<br><br>(4) Trademark Dilution under 15 U.S.C. § 1125(c)<br><br>(5) Copyright Infringement under 17 U.S.C. § 501(a)<br><br>(6) State Trademark Infringement under N.R.S. § 600.420<br><br>(7) State Trademark Dilution under N.R.S. § 600.435<br><br>(8) Deceptive Trade Practices under N.R.S. § 598.0915<br><br>(9) Common Law Trademark Infringement<br><br>(10) Common Law Intentional Interference with Prospective Economic Advantage |

For its complaint against Defendant Hans Martin Pollack ("Defendant"), Plaintiff Boyd Gaming Corporation ("Boyd") alleges the following:

## NATURE OF THE CASE

This is an action for cybersquatting, trademark infringement, unfair competition, and trademark dilution and copyright infringement under federal statutes, with pendent state and/or common law claims for trademark infringement, dilution, intentional interference with prospective economic advantage and deceptive trade practices. Boyd seeks damages, attorneys' fees, costs, and preliminary and permanent injunctive relief.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over Boyd's state and common law claims pursuant to 28 U.S.C. § 1367(a).

2. This Court has personal jurisdiction over Defendant based upon the following: (a) Defendant operates websites on the Internet that are accessible to residents of the State of Nevada; (b) Defendant's domain names resolve to websites that are interactive in that they allow Internet users to gamble; and (c) Defendant has committed tortious acts that Defendant knew or should have known would cause injury to a resident in the State of Nevada.

3. Venue is proper in the United States District Court for the District of Nevada under 28 U.S.C. §§ 1391(b) and 1391(c).

## PARTIES

4. Plaintiff Boyd Gaming Corporation is a Nevada corporation, which owns and operates resort hotel casinos throughout the United States.

5. Upon information and belief, Defendant Hans Martin Pollack is an individual residing in Austria who owns an Internet domain name which is used to operate an online casino accessible to United States residents.

**BOYD'S RIGHTS**

6. The Stardust Resort & Casino ("Stardust") opened in Las Vegas, Nevada in 1958 on the Las Vegas Strip.

7. Over the course of its nearly fifty year tenure as a Las Vegas landmark, the Stardust continuously used the STARDUST name and mark to promote its casino and hotel services.

8. One of the Stardust's most iconic features was its roadside neon sign, with distinct lettering and star design background (the "Stardust Road Sign"):

 

Boyd and its predecessors in interest have acquired exclusive rights in the distinct STARDUST design recognized through Boyd's federal design mark registrations listed in Paragraph 11(b)-(c) and (f) below. The distinct lettering used in the Stardust Road Sign was also featured prominently in connection with the goods and services available at the Stardust property:



9. Boyd purchased the Stardust property in 1985, and acquired all rights to use the STARDUST name and mark, including exclusive rights in the distinct design of the Stardust Road Sign. These rights are evidenced by trademark registrations listed in Paragraph 11 below, and copyright registration listed in Paragraph 13 below.

10. Since the Stardust property opened in 1958, Boyd and its predecessors in interest have continuously used the STARDUST name and mark in connection with a variety of goods and services.

11. Boyd owns numerous federal trademark registrations for STARDUST on the Principal Register of the United States Patent and Trademark Office ("USPTO") in connection with a variety of goods and services:

   a) **STARDUST** for casino services, hotel, restaurant, bar, night club, beauty salon and barbershop, and retail gift store services (Reg. No. 1,580,234) in International Classes 41 and 42;

   b) **STARDUST (and Design)** for casino and entertainment services, namely, live performances featuring musicians and singers, dancers, magicians, actors, acrobats, comedians and prerecorded music and video; nightclub services (Reg. No. 3,523,051) in International Class 41;

   c) **STARDUST (and Design)** for resort hotel, restaurant, bar and cocktail lounge services; arena services, namely, providing facilities for sports, concerts, conventions and exhibitions; providing banquet and social function facilities for special occasions; providing convention facilities; providing facilities for exhibitions (Reg. No. 3,526,205) in International Class 43; and

   d) **STARDUST EVENT CENTER (and design)** for arena services, namely, providing facilities for sports, concerts, conventions and exhibitions; providing banquet and social function facilities for special occasions; provision of conference, exhibition and meeting facilities (Reg. No. 3,641,088) in International Class 43.

Boyd also owns a Nevada state trademark registration for STARDUST casino services; hotel services, arena services; banquet and social function facilities for special occasions; provision of conference, exhibition and meeting facilities; and parking lot services (NV Reg. E0149642011-1) (collectively, the federal and state registrations are herein referred to as the "STARDUST Marks").

12. Boyd's federal and Nevada trademark registrations have not been abandoned, cancelled or revoked. Moreover, the federal trademark registration listed in Paragraph 11(a) has become incontestable through the filing of Section 8 and 15 affidavits in the USPTO.

13. Additionally, Boyd owns a federal copyright registration with the United States Copyright Office for the Stardust Road Sign (Reg. No. VA-1-388-962), registered October 30, 2006 ("Stardust Copyright").

14. The Stardust property was imploded in 2007, and due to the longstanding fame of the property and the STARDUST Marks, the implosion was itself an event garnering significant media attention.

15. Since the Stardust property was imploded, Boyd has continued to use the famous STARDUST Marks to promote its hotel and gaming services at its Orleans Hotel & Casino in Las Vegas, Nevada, in connection with its STARDUST SUITE and THE LEGENDARY STARDUST casino:







16. Boyd also uses STARDUST EVENT CENTER for arena and banquet related services at its Blue Chip Casino Hotel Spa in Michigan City, Indiana, which it advertises on the Internet on its <bluechipcasino.com> website:



17. Boyd has continued to protect and promote its rights in the STARDUST Marks and the goodwill associated with the STARDUST name through the following trademark licenses:

    a. Lucky Brand Dungarees, Inc. (for STARDUST-branded men's, women's and children's apparel and jewelry) from May 27, 2009, through December 31, 2010; and

    b. Las Vegas Convention and Visitors Authority (for promoting Las Vegas, Nevada as a travel destination, and a STARDUST-branded parking lot at

the Las Vegas Convention Center) from April 3, 2008, to April 3, 2018, (together "STARDUST Licenses"). The STARDUST Licenses have expanded the scope of exposed consumers to the STARDUST brand and contribute to the persisting fame of the STARDUST Marks.

18. Additionally, the Stardust property has been featured and discussed in numerous publications and films throughout the decades, helping to spread the fame and recognition of the STARDUST brand and name throughout the world:

  a. The book *Casino: Love and Honor in Las Vegas*, and the film *Casino*, chronicled the Stardust Hotel & Casino's operations in the 1970s and early 1980s;

  b. The book *The Odds: One Season, Three Gamblers and the Death of Their Las Vegas*, chronicled a year in the lives of Stardust race & sports book manager Joe Lupo and assistant manager Bob Scucci;

  c. The book *The Stardust of Yesterday: Reflections on a Las Vegas Legend*, is a complete history of the Stardust Hotel & Casino;

  d. The Stardust Road Sign can be seen in the following films: *Austin Powers*, *Fear and Loathing in Las Vegas*, and *Mars Attacks!*; and

  e. The following films were filmed at least in part at the Stardust Hotel & Casino: *Saved By The Bell: Wedding In Las Vegas*, *Showgirls*, and *Swingers*.

19. Boyd has also continued to protect its rights in the STARDUST name by, among other things, immediately asserting its rights against trademark and copyright infringers upon discovering infringing activity.

20. Boyd has spent substantial sums of money to advertise, promote and protect the use of the STARDUST Marks in print, broadcast and Internet media.

21. Boyd and its predecessors in interest have also made extensive use of the STARDUST Marks on, among other things, signage, wearing apparel, souvenirs and promotional materials.

22. Since the Stardust property first opened in 1958, millions of visitors throughout the United States have visited and seen the Stardust property and Boyd's other properties that continue to use the STARDUST Marks, and numerous consumer products and promotional items bearing the STARDUST Marks have been sold or otherwise distributed since that time.

23. Based on its trademark registrations and extensive use, Boyd owns the exclusive right to use the STARDUST Marks in connection with casino, hotel and related services.

24. The STARDUST Marks have become distinctive and famous in the United States and around the world for casino, hotel and related services.

25. Based on its copyright registration, Boyd owns the exclusive right to use, reproduce, publicly display and prepare derivative works of the Stardust Road Sign.

## DEFENDANT'S INFRINGING ACTIVITIES

26. On or about May 4, 2010, Defendant registered the <stardustgaming.com> and <stardustgaming.net> Internet domain names (the "Infringing Domain Names") with Globedom, a registrar for domain names.

27. Some time after registration, Defendant linked the Infringing Domain Names to separate but identical websites that allow users to gamble online ("Infringing Websites").

28. Not only do the Infringing Websites prominently display Plaintiff's STARDUST Marks in their banners, but they also uses the exact distinct lettering and background elements used in the Stardust Road Sign that helped make the STARDUST name famous:



Both Infringing Websites use the foregoing image in their banners and operate under the name "stardustgaming.com."

29. The Infringing Websites allow users to either download software to participate in online gaming or engage in "instant play," whereby users can immediately access an Internet-based program that allows them to gamble online.

30. The Infringing Websites also specifically target United States residents, stating "US Players Welcome."

31. Boyd recently became aware of Defendant's activities, in March 2011.

32. The Infringing Domain Names contains Boyd's famous STARDUST Marks in conjunction with the word "gaming," which describes the very services offered by Boyd under the STARDUST Marks.

33. The STARDUST Marks had been distinctive and famous for over fifty years at the time Defendant registered the Infringing Domain Names.

34. Defendant did not obtain Boyd's consent or authorization to register domain names containing Boyd's STARDUST Marks.

35. Upon information and belief, by registering and using domain names containing the STARDUST Marks, Defendant was and is attempting to trade on Boyd's goodwill in the STARDUST Marks.

36. Upon information and belief, by registering and using domain names containing Boyd's STARDUST Marks, and by using the same to direct users to online gambling websites, Defendant was and is attempting to create an association between the Infringing Domain Names and Boyd's STARDUST Marks.

37. Upon information and belief, by registering and using domain names containing Boyd's STARDUST Marks, and linking them to online gaming websites, Defendant was and is attempting to create an association between the Infringing Domain Names, the Infringing Websites and casino services associated with the STARDUST name.

38. Upon information and belief, by registering and using domain names containing Boyd's STARDUST Marks, Defendant was and is intending to entice customers away from visiting Boyd's properties using the STARDUST name and directing users to instead gamble through the Infringing Websites in a manner that could harm the goodwill represented by Boyd's STARDUST Marks.

39. Upon information and belief, Defendant registered the Infringing Domain Names with the bad faith intent to profit from Boyd's STARDUST Marks.

40. Upon information and belief, Defendant has no trademark or other intellectual property rights in the STARDUST name or Marks.

41. Upon information and belief, Defendant has never used the Infringing Domain Names in connection with the bona fide offering of any goods or services.

42. Upon information and belief, Defendant did not believe or have reasonable grounds to believe that his use of the Infringing Domain Names was a fair use or otherwise lawful.

43. Because the Stardust Copyright gave Defendant constructive notice of Boyd's copyright registration, Defendant has had access to the Stardust Copyright.

44. Upon information and belief, Defendant intentionally and knowingly utilized, copied and displayed imagery substantially similar to original elements of Boyd's Stardust Copyright when he published the Stardust Copyright on the Internet on his Infringing Websites in connection with Internet gaming.

45. Upon information and belief, Defendant was aware and had reason to believe his acts constituted an infringement of the Stardust Copyright.

46. Upon information and belief, Defendant did not believe or have reasonable grounds for believing that his use of the Stardust Copyright was a fair use.

## COUNT I

### (Cybersquatting – 15 U.S.C. § 1125(d))

47. Boyd incorporates the allegations in the preceding paragraphs as if fully set forth herein.

48. Defendant has registered, trafficked in, and/or used domain names that are confusingly similar to and/or dilutive of Boyd's STARDUST Marks.

49. Boyd's STARDUST Marks were distinctive and/or famous at the time Defendant registered the Infringing Domain Names.

50. Upon information and belief, Defendant has and/or had a bad faith intent to profit from Boyd's STARDUST Marks.

51.     As a direct and proximate result of such conduct, Boyd has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

## COUNT II

### (Federal Trademark Infringement – 15 U.S.C. § 1114)

52.     Boyd incorporates the allegations in the preceding paragraphs as if fully set forth herein.

53.     By registering domain names containing Boyd's STARDUST Marks and using the same to direct users to online gaming websites, Defendant intentionally and knowingly used in commerce reproductions, counterfeits, copies and/or colorable imitations of Boyd's trademarks in connection with the sale, offering for sale, or advertising of services in a manner that is likely to cause confusion or mistake, or to deceive consumers as to an affiliation, connection, or association with Boyd.

54.     Defendant's use of domain names containing Boyd's STARDUST Marks has created a likelihood of confusion among consumers who may falsely believe that the Infringing Domain Names and Infringing Websites are associated with the STARDUST name or that Boyd sponsors or approves of Defendant's services or commercial activities.

55.     Defendant's use of domain names containing Boyd's STARDUST Marks is also likely to cause initial interest confusion.

56.     Defendant's continued and knowing use of Boyd's STARDUST Marks without Boyd's consent or authorization constitutes intentional infringement of Boyd's federal registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

57.     As a direct and proximate result of Defendant's infringement, Boyd has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

## COUNT III

### (Unfair Competition: False Designation of Origin – 15 U.S.C. § 1125(a)(1)(A))

58.     Boyd incorporates the allegations in the preceding paragraphs as if fully set forth herein.

59. Defendant's use of domain names that are confusingly similar to Boyd's STARDUST Marks constitutes intentional conduct by Defendant to make false designations of origin and false descriptions about Defendant's services and commercial activities.

60. Defendant's actions have created a likelihood of confusion among consumers who will falsely believe that the services Defendant offers through the Infringing Websites are produced by, or affiliated or associated with, Boyd, when in fact they are not.

61. Upon information and belief, Defendant acted knowingly, deliberately, and willfully with the intent to trade on Boyd's reputation.

62. Defendant's conduct is willful, wanton and egregious.

63. As a direct and proximate result of such unfair competition, Boyd has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

## COUNT IV

### (Federal Trademark Dilution –15 U.S.C. § 1125(c))

64. Boyd incorporates the allegations in the preceding paragraphs as if fully set forth herein.

65. Boyd's STARDUST Marks are inherently distinctive.

66. Based on Boyd and Boyd's predecessors in interest's continuous and extensive use of the STARDUST Marks, the STARDUST Marks are entitled to be recognized as famous under 15 U.S.C. § 1125(c).

67. Defendant began using, in commerce, domain names containing Boyd's STARDUST Marks, decades after Boyd's STARDUST Marks became famous.

68. Defendant's unauthorized use of domain names that are confusingly similar to Boyd's STARDUST Marks has and will cause dilution of the distinctive quality of Boyd's STARDUST Marks and the goodwill associated with them, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

69. Upon information and belief, Defendant's actions were willful in nature, in that Defendant willfully intended to trade on Boyd's reputation or to dilute Boyd's STARDUST Marks.

70. As a direct and proximate result of Defendant's dilution of Boyd's STARDUST Marks, Boyd has suffered, and will continue to suffer, irreparable injury to its business, reputation, and goodwill.

## COUNT V
### (Copyright Infringement – 17 U.S.C. § 501(a))

71. Boyd incorporates the allegations in the preceding paragraphs as if fully set forth herein.

72. Boyd owns the exclusive right to use the Stardust Copyright through its federal registration with the United States Copyright Office.

73. Boyd's valid federal copyright registration gives Defendant constructive notice of Plaintiff's ownership rights, and Defendant thereby has had access to the Stardust Copyright.

74. Defendant did not obtain Boyd's consent or authorization to use, reproduce, publicly display or prepare a derivative work of the Stardust Copyright in commerce or otherwise.

75. Upon information and belief, Defendant intentionally and knowingly utilized, copied and displayed imagery substantially similar to original elements of Boyd's Stardust Copyright on his Infringing Websites in connection with Internet gaming.

76. Defendant's knowing use of original elements of Boyd's copyrighted work without Boyd's consent or authorization constitutes intentional infringement of Boyd's Stardust Copyright in violation of the United States Copyright Act.

77. Unless Defendant is prohibited from using Boyd's copyrights to offer, advertise, and promote his internet gaming services, Defendant will continue to infringe upon Boyd's Stardust Copyright.

78. As a direct and proximate result of Defendant's infringement, Boyd has suffered monetary loss and irreparable injury to its business, reputation and goodwill.

## COUNT VI
### (State Trademark Infringement – N.R.S. § 600.420)

79. Boyd incorporates the allegations in the preceding paragraphs as if fully set forth herein.

80. By registering domain names containing Boyd's STARDUST Marks and linking them to online gaming websites, Defendant intentionally and knowingly used in commerce reproductions, counterfeits, copies and/or colorable imitations of Boyd's trademarks in connection with the sale, offering for sale, or advertising of services in a manner that is likely to cause confusion or mistake, or to deceive consumers as to an affiliation, connection, or association with Boyd.

81. Defendant's use of domain names containing Boyd's STARDUST Marks has created a likelihood of confusion among consumers who may falsely believe that the Infringing Domain Names are associated with the STARDUST name or that Boyd sponsors or approves of Defendant's services or commercial activities.

82. Defendant's use of domain names containing Boyd's STARDUST Marks is also likely to cause initial interest confusion.

83. Defendant's continued and knowing use of Boyd's STARDUST Marks without Boyd's consent or authorization constitutes intentional infringement of Boyd's registered state trademark in violation of N.R.S. § 600.420.

84. As a direct and proximate result of Defendant's infringement, Boyd has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

## COUNT VII
### (State Trademark Dilution – N.R.S. § 600.435)

85. Boyd incorporates the allegations in the preceding paragraphs as if fully set forth herein.

86. Based on Boyd and Boyd's predecessors in interest's continuous and extensive use of the STARDUST Marks, the STARDUST Marks have acquired fame and distinctiveness throughout the State of Nevada, the United States and the world.

87. Defendant began using, in commerce, domain names containing Boyd's STARDUST Marks, decades after Boyd's STARDUST Marks became famous in Nevada.

88. Defendant's unauthorized use of domain names that are confusingly similar to Boyd's STARDUST Marks has and will cause dilution of the distinctive quality of Boyd's STARDUST Marks and the goodwill associated with them.

89. Upon information and belief, Defendant's actions were willful in nature, in that Defendant willfully intended to trade on Boyd's reputation or to dilute Boyd's STARDUST Marks.

90. As a direct and proximate result of Defendant's dilution of Boyd's STARDUST Marks, Boyd has suffered, and will suffer, irreparable injury to its business, reputation, and goodwill.

## COUNT VIII

### (Deceptive Trade Practices – N.R.S. § 598.0915)

91. Boyd incorporates the allegations in the preceding paragraphs as if fully set forth herein.

92. Upon information and belief, in the course of conducting business, Defendant knowingly made false representations as to an affiliation, connection, and/or association with the STARDUST name by using marks identical and/or confusingly similar to Boyd's STARDUST Marks, and otherwise engaged in deceptive trade practices.

93. As a direct and proximate result of Defendant's deceptive conduct, Boyd suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and goodwill.

## COUNT IX

**(Common Law Intentional Interference with Prospective Economic Advantage)**

94. Boyd incorporates the allegations in the preceding paragraphs as if fully set forth herein.

95. Upon information and belief, at and since the time Defendant began using Boyd's STARDUST Marks, Defendant knew and has known that Boyd is in the business of providing casino services.

96. Upon information and belief, Defendant committed acts intended or designed to disrupt Boyd's prospective economic advantage arising from advertising and/or providing these services.

97. Defendant's actions have disrupted or are intended to disrupt Boyd's business by, among other things, enticing customers away from visiting Boyd's properties using the STARDUST name and directing users to instead gamble through the Infringing Websites.

98. Defendant has no legal right, privilege or justification for this conduct.

99. As a direct and proximate result of Defendant's intentional interference with the Boyd's prospective economic advantage, Boyd has suffered, and will continue to suffer, monetary damages and irreparable injury.

100. Based on the intentional, willful and malicious nature of Defendant's actions, Boyd is entitled to recover monetary damages, exemplary or punitive damages and reasonable attorneys' fees and costs incurred in connection with this action.

## COUNT X

**(Common Law Trademark Infringement)**

101. Boyd incorporates the allegations in the preceding paragraphs as if fully set forth herein.

102. By virtue of having used and continuing to use Boyd's STARDUST Marks, Boyd and Boyd's predecessors in interest have acquired common law trademark rights in the marks.

103. Defendant's use of domain names containing Boyd's STARDUST Marks infringes upon Boyd's common law trademark rights in its STARDUST Marks and is likely to cause

confusion, mistake, or deception among consumers, who will believe that the online gaming services Defendant offers through the Infringing Websites originate from, are affiliated with, or are endorsed by Boyd, when, in fact, they are not.

104.    As a direct and proximate result of Defendant's infringement, Boyd has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

### PRAYER FOR RELIEF

WHEREFORE, Boyd respectfully prays that the Court grant the following relief:

A.    A preliminary and permanent injunction prohibiting Defendant, Defendant's respective officers, agents, servants, employees and/or all persons acting in concert or participation with Defendant, from: (1) using Boyd's STARDUST Marks or confusingly similar variations thereof, alone or in combination with any other letters, words, letter strings, phrases or designs, in commerce or in connection with any business or for any purpose whatsoever (including, but not limited to, on websites, in domain names, in hidden text and metatags); and (2) registering or trafficking in any domain names containing the Boyd's STARDUST Marks or confusingly similar variations thereof, alone or in combination with any other letters, words, phrases or designs;

B.    A permanent injunction requiring the current domain name registrar to transfer the <stardustgaming.com> and <stardustgaming.net> Internet domain names to Boyd;

C.    An award of compensatory, consequential, statutory, exemplary, and/or punitive damages to Boyd in an amount to be determined at trial;

D.    An award of interest, costs and attorneys' fees incurred by Boyd in prosecuting this action; and

E.  All other relief to which Boyd is entitled.

DATED this 14th day of April, 2011        Respectfully submitted,

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: /s/ Jeffrey S. Rugg
Jeffrey S. Rugg (# 10978)
Laura E. Bielinski (# 10516)
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614

Attorneys for Plaintiff
BOYD GAMING CORPORATION

12312\0\1513514.2